## Jackson Estate

*Henry Stuckert Miller,* and *Duane, Morris & Heckscher,* for accountants.

*Wright, Spencer, Manning & Sagendorph,* and *Dechert, Price & Rhoads,* for surviving spouse.

*Anthony J. Giangiulio,* for Montgomery County.

TAXIS, P. J., May 15, 1964.—Andrew F. Jackson died on April 18, 1963, leaving a will which was probated on May 2, 1963, and on which letters testamentary were granted to the accountants.

The petition for adjudication raises the issues: (1) Whether or not decedent's spouse waived her right to the family exemption by reason of the terms of a nuptial agreement; and (2) whether or not a refund for overpayment of 1962 Federal income tax is part of decedent's estate.

Decedent and his wife, Elizabeth, were married on October 9, 1954, and executed a written agreement on March 2, 1955, which was confirmatory of an oral ante-nuptial agreement. By the terms of this nuptial agreement decedent's wife agreed ". . . that she will waive all claims and demands of every character or description which she may, might, could or shall in anywise acquire by reason of said marriage, whether by way of dower or by virtue of any statute governing the distribution of decedent's estates in and to any and all property, real, personal or mixed, of which the husband is now or may hereafter during the marriage become seized or possessed in his own right . . ." Such language in a nuptial agreement is sufficient to effect a waiver of the right to the family exemption. See 3 Hunter, Pennsylvania Orphans' Court Commonplace Book, Family Exemption §10(c).

We turn now to the tax refund questions. The facts have been stipulated. For several years prior to de-

cedent's death, the tax accountants, employed by decedent and his wife, calculated the total joint income tax due for the preceding year on account of the combined total income, and then calculated the percentage of total joint tax attributable to the respective amounts of income received by each. The respective amounts of estimated tax attributable to each taxpayer was also calculated for the ensuing year. This procedure was followed in 1962, and, pursuant to this procedure, decedent paid each quarterly installment of estimated tax as it fell due, and the wife reimbursed her husband during 1962 in amounts equal in aggregate to her share of the tax payment. The refund here involved is, in fact, attributable to overpayment by decedent on his share of the tax liability.

It is entirely a matter of intention whether one spouse creates a tenancy by entireties in Federal income tax payments or refunds as evidenced by the conduct of the parties: MacNeill Estate, 21 D. & C. 2d 480, 483.

The acts of the husband and wife in this case clearly negative any intention of decedent to create a tenancy by the entireties in the tax payments or in the refund. As is evidenced by their nuptial agreement, decedent and his wife maintained separate estates. In addition, records were kept to determine their separate tax liability, and adjustments were made between their separate estates on the basis of these records. The course of the consideration which created the refund in question is the separate estate of decedent. These factors are amply sufficient to rebut any presumption that decedent intended to create a tenancy by the entireties in the tax refund. The refund, therefore, belongs to decedent's estate.

And now, May 15, 1964, this adjudication is confirmed nisi.